JS 44 (Rev 06/17)

**CIVIL COVER SHEET**

18-4447

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM)*

**I. (a) PLAINTIFFS**

Brian D Whitmore

**DEFENDANTS**

National Railroad Passenger Corporation (d/b/a AMTRAK and Brotherhood of Maintenance of Way Employees

**(b)** County of Residence of First Listed Plaintiff   Camden, NJ
*(EXCEPT IN U S PLAINTIFF CASES)*

County of Residence of First Listed Defendant   Philadelphia, PA
*(IN U S PLAINTIFF CASES ONLY)*

NOTE   IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED

**(c)** Attorneys *(Firm Name Address, and Telephone Number)*

Mark D. Schwartz, Esq , P.O  Box 330, Bryn Mawr, PA 19010 , 610 525-5534

Attorneys *(If Known)*

**II. BASIS OF JURISDICTION** *(Place an "X" in One Box Only)*

☐ 1  U S Government Plaintiff

☒ 3  Federal Question *(U S Government Not a Party)*

☐ 2  U S Government Defendant

☐ 4  Diversity *(Indicate Citizenship of Parties in Item III)*

**III. CITIZENSHIP OF PRINCIPAL PARTIES** *(Place an "X" in One Box for Plaintiff and One Box for Defendant)* *(For Diversity Cases Only)*

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☒ 4 |
| Citizen of Another State | ☒ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. NATURE OF SUIT** *(Place an "X" in One Box Only)*

Click here for  Nature of Suit Code Descriptions

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - Product Liability | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 376 Qui Tam (31 USC 3729(a)) |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 367 Health Care/ |  |  | ☐ 400 State Reapportionment |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | Pharmaceutical Personal Injury |  | **PROPERTY RIGHTS** | ☐ 410 Antitrust |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | Product Liability | | ☐ 820 Copyrights | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | ☐ 340 Marine | ☐ 368 Asbestos Personal Injury Product Liability |  | ☐ 830 Patent | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans) | ☐ 345 Marine Product Liability | **PERSONAL PROPERTY** | | ☐ 835 Patent - Abbreviated New Drug Application | ☐ 460 Deportation |
|  | ☐ 350 Motor Vehicle | ☐ 370 Other Fraud | **LABOR** | ☐ 840 Trademark | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 355 Motor Vehicle Product Liability | ☐ 371 Truth in Lending | ☐ 710 Fair Labor Standards Act | **SOCIAL SECURITY** | ☐ 480 Consumer Credit |
| ☐ 160 Stockholders' Suits | ☐ 360 Other Personal Injury | ☐ 380 Other Personal Property Damage | ☐ 720 Labor/Management Relations | ☐ 861 HIA (1395ff) | ☐ 490 Cable/Sat TV |
| ☐ 190 Other Contract | ☐ 362 Personal Injury - Medical Malpractice | ☐ 385 Property Damage Product Liability | ☐ 740 Railway Labor Act | ☐ 862 Black Lung (923) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 195 Contract Product Liability |  |  | ☐ 751 Family and Medical Leave Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise |  |  | ☐ 790 Other Labor Litigation | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
|  |  |  |  | ☐ 865 RSI (405(g)) | ☐ 893 Environmental Matters |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 791 Employee Retirement Income Security Act | **FEDERAL TAX SUITS** | ☐ 895 Freedom of Information Act |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | **Habeas Corpus:** |  | ☐ 870 Taxes (U S Plaintiff or Defendant) | ☐ 896 Arbitration |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee |  | ☐ 871 IRS  Third Party 26 USC 7609 | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 230 Rent Lease & Ejectment | ☒ 442 Employment | ☐ 510 Motions to Vacate Sentence |  |  | ☐ 950 Constitutionality of State Statutes |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Accommodations | ☐ 530 General |  |  |  |
| ☐ 245 Tort Product Liability | ☐ 445 Amer w/Disabilities - Employment | ☐ 535 Death Penalty | **IMMIGRATION** |  |  |
| ☐ 290 All Other Real Property | ☐ 446 Amer w/Disabilities - Other | **Other:** | ☐ 462 Naturalization Application |  |  |
|  | ☐ 448 Education | ☐ 540 Mandamus & Other | ☐ 465 Other Immigration Actions |  |  |
|  |  | ☐ 550 Civil Rights |  |  |  |
|  |  | ☐ 555 Prison Condition |  |  |  |
|  |  | ☐ 560 Civil Detainee - Conditions of Confinement |  |  |  |

**V. ORIGIN** *(Place an "X" in One Box Only)*

☒ 1 Original Proceeding
☐ 2 Removed from State Court
☐ 3 Remanded from Appellate Court
☐ 4 Reinstated or Reopened
☐ 5 Transferred from Another District *(specify)*
☐ 6 Multidistrict Litigation - Transfer
☐ 8 Multidistrict Litigation - Direct File

**VI. CAUSE OF ACTION**

Cite the U S  Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*
42 USC 1981, Title VII of the Civil Rights Act of 1964 as amended 42 USC Section 2000e

Brief description of cause
civil rights + failure to represent

**VII. REQUESTED IN COMPLAINT:**

☐ CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F R Cv P

DEMAND $ more than $150,000

CHECK YES only if demanded in complaint
JURY DEMAND:   ☒ Yes   ☐ No

**VIII. RELATED CASE(S) IF ANY** *(See instructions)*

JUDGE _____   DOCKET NUMBER _____

OCT 16 2018

DATE  10/16/2018

SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT # _____   AMOUNT _____   APPLYING IFP _____   JUDGE _____   MAG JUDGE _____

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

**18** **4447**

### DESIGNATION FORM
*(to be used by counsel or pro se plaintiff to indicate the category of the case for the purpose of assignment to the appropriate calendar)*

Address of Plaintiff: _____ 8390 Crofton Lane, Merchantville, NJ 08109

Address of Defendant: _____ 30th Street station , Philadelphia

Place of Accident, Incident or Transaction: _____ in the PA jurisdiction

---

**RELATED CASE, IF ANY:**

Case Number: _____ Judge: _____ Date Terminated: _____

Civil cases are deemed related when *Yes* is answered to any of the following questions.

1. Is this case related to property included in an earlier numbered suit pending or within one year previously terminated action in this court?  Yes ☐  No ☐

2. Does this case involve the same issue of fact or grow out of the same transaction as a prior suit pending or within one year previously terminated action in this court?  Yes ☐  No ☐

3. Does this case involve the validity or infringement of a patent already in suit or any earlier numbered case pending or within one year previously terminated action of this court?  Yes ☐  No ☐

4. Is this case a second or successive habeas corpus, social security appeal, or pro se civil rights case filed by the same individual?  Yes ☐  No ☐

I certify that, to my knowledge, the within case ☐ is / ☒ is not related to any case now pending or within one year previously terminated action in this court except as noted above

DATE: 10/16/2018 _____ _____ 30527

*Attorney-at-Law / Pro Se Plaintiff* _____ *Attorney I.D. # (if applicable)*

---

**CIVIL: (Place a √ in one category only)**

**A.** *Federal Question Cases:*

- ☐ 1. Indemnity Contract, Marine Contract, and All Other Contracts
- ☐ 2. FELA
- ☐ 3. Jones Act-Personal Injury
- ☐ 4. Antitrust
- ☐ 5. Patent
- ☐ 6. Labor-Management Relations
- ☑ 7. Civil Rights
- ☐ 8. Habeas Corpus
- ☐ 9. Securities Act(s) Cases
- ☐ 10. Social Security Review Cases
- ☐ 11. All other Federal Question Cases
  *(Please specify)* _____

**B.** *Diversity Jurisdiction Cases:*

- ☐ 1. Insurance Contract and Other Contracts
- ☐ 2. Airplane Personal Injury
- ☐ 3. Assault, Defamation
- ☐ 4. Marine Personal Injury
- ☐ 5. Motor Vehicle Personal Injury
- ☐ 6. Other Personal Injury *(Please specify)* _____
- ☐ 7. Products Liability
- ☐ 8. Products Liability -- Asbestos
- ☐ 9. All other Diversity Cases
  *(Please specify)* _____

---

**ARBITRATION CERTIFICATION**
*(The effect of this certification is to remove the case from eligibility for arbitration )*

I, **Mark D. Schwartz** _____, counsel of record *or* pro se plaintiff, do hereby certify

☐ Pursuant to Local Civil Rule 53.2, § 3(c) (2), that to the best of my knowledge and belief, the damages recoverable in this civil action case exceed the sum of $150,000.00 exclusive of interest and costs:

☑ Relief other than monetary damages is sought.

OCT 16 2018

DATE: 10/16/2018 _____ Pa ID #30527

*Attorney-at-Law / Pro Se Plaintiff* _____ *Attorney I.D. # (if applicable)*

NOTE: A trial de novo will be a trial by jury only if there has been compliance with F.R.C.P. 38.



**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

<u>**CASE MANAGEMENT TRACK DESIGNATION FORM**</u>

BRIAN D. WHITMORE

:

CIVIL ACTION

v.

Netmal Railroad Passenger corp:
Brotherhood of Maintenance of Way Employees

NO.

**18    4447**

In accordance with the Civil Justice Expense and Delay Reduction Plan of this court, counsel for plaintiff shall complete a Case Management Track Designation Form in all civil cases at the time of filing the complaint and serve a copy on all defendants. (See § 1:03 of the plan set forth on the reverse side of this form.) In the event that a defendant does not agree with the plaintiff regarding said designation, that defendant shall, with its first appearance, submit to the clerk of court and serve on the plaintiff and all other parties, a Case Management Track Designation Form specifying the track to which that defendant believes the case should be assigned.

**SELECT ONE OF THE FOLLOWING CASE MANAGEMENT TRACKS:**

(a) Habeas Corpus – Cases brought under 28 U.S.C. § 2241 through § 2255.          ( )

(b) Social Security – Cases requesting review of a decision of the Secretary of Health
   and Human Services denying plaintiff Social Security Benefits.          ( )

(c) Arbitration – Cases required to be designated for arbitration under Local Civil Rule 53.2.   ( )

(d) Asbestos – Cases involving claims for personal injury or property damage from
   exposure to asbestos.          ( )

(e) Special Management – Cases that do not fall into tracks (a) through (d) that are
   commonly referred to as complex and that need special or intense management by
   the court. (See reverse side of this form for a detailed explanation of special
   management cases.)          ( )

(f) Standard Management – Cases that do not fall into any one of the other tracks.          (X)

10/18/2018 _____
**Date**

6105255534 _____
**Telephone**

_____
**Attorney-at-law**

610 525-5534 _____
**FAX Number**

Mark D Schwartz _____
**Attorney for** Plaintiff

markschwartz6814@gmail.com
**E-Mail Address**

(Civ. 660) 10/02

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| BRIAN D. WHITMORE | : | |
| 8390 Crofton Lane | : | |
| Merchantville, NJ 08109 | : | CIVIL ACTION |
| Plaintiff | : | |
| | : | NO. |
| | : | |
| v. | : | **JURY TRIAL DEMANDED** |
| | : | |
| NATIONAL RAILROAD PASSENGER | : | COMPLAINT |
| CORPORATION, d/b/a "AMTRAK" | : | |
| 60 Massachusetts Ave, NE | : | |
| Washington, DC 20002 | : | |
| Defendant | : | |
| And | : | |
| | : | |
| BROTHERHOOD OF MAINTENANCE OF | : | |
| WAY EMPLOYEES | : | |
| 30th and Market Street | : | |
| Philadelphia, PA 19104 | : | |
| Defendant | : | |
| | : | |

COMPLAINT

1.     Mr. Brian D. Whitmore, by his lawyer Mark D. Schwartz, Esquire avers as follows:

## **NATURE OF THIS ACTION**

2.     Plaintiff Brian D. Whitmore ("Whitmore"), is employed by National Railroad Passenger

Corporation d/b/a "AMTRAK" ("AMTRAK"). He seeks to recover damages under 42 U.S.C.§

1981 ("Section 1981"), Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e, ("Title VII")

and the Pennsylvania Human Act ("PHRA") caused by AMTRAK  as a result of unlawful

employment practices consisting of discriminating against Plaintiff on account of race and

depriving him of career advancement, by virtue of his being placed in various positions which he

subsequently was forced to forfeit as a result of  AMTRAK's refusal to train him. Plaintiff has

repeatedly complained to management about this situation and has been retaliated against without any alleviation of the situation

This law suit is the partial result of dual filings with the Equal Employment Opportunity Commission ("EEOC") and Pennsylvania Human Relations Commission. ("PaHRC") against AMTRAK.  Plaintiff seeks declaratory and injunctive relief, back pay, front pay, compensatory and punitive damages, where applicable, together with attorneys' fees, costs and expenses of this suit to redress the effects of AMTRAK's pervasive and racially discriminatory employment policies, practices and procedures.

Plaintiff has also repeatedly lodged complaints with his union, defendant BMWE, after which it has shown nothing in the way of interest in his situation, let alone advocacy towards remedy or results. As a result, this lawsuit is also filed against the Brotherhood of Maintenance of Way Employees ("BMWE") for its failure of representation required by the National Labor Relations Board. Pursuant to the National Labor Relations Act, 61 Stat.156, as amended, and the Railway Labor Act, 44 Stat. 577 (1926), as amended

## PARTIES

3.     Plaintiff, Brian D. Whitmore ("Whitmore" or "Plaintiff "), is an adult African-American male who resides at 8390 Crofton Lane, Merchantville, NJ 08109.  At the times pertinent to this Complaint he was an employee of AMTRAK based out of its Philadelphia, Pennsylvania station and facility, serving what is known as AMTRAK's "Northeast Corridor".  As an African-American male, he a member of a protected category of individuals under pertinent civil rights statutes.

4.     Defendant, National Railroad Passenger Corporation ("AMTRAK"), according to the US Department of Transportation's website, "is a for-profit corporation that operates intercity

passenger rail services in 46 States and the District of Columbia, in addition to serving as a contractor in various capacities for several commuter rail agencies" Further it is noted that "Amtrak was created by Congress in the Rail Passenger Service Act of 1970 and incorporated in the District of Columbia in 1971, assuming the common carrier obligations of the private railroads (which found passenger service to be generally unprofitable) in exchange for the right to priority access of their tracks for incremental cost." AMTRAK's Board of Directors sets corporate policy and oversees the management of the company. The board is made up of seven (7) voting members appointed for five-year terms by the President with the advice and consent of the Senate. The President has appointed the Secretary of Transportation as one of the board members. AMTRAK receives subsidy from both the Federal Government and the State of Pennsylvania.

At all relevant times, Employer has continuously been engaged in an industry affecting commerce within the meaning of Sections 701(b), (g) and (h) of Title VII, 42 U.S.C. §§2000e (b), (g) and (h).

5.      Defendant Brotherhood of Maintenance of Way Employees ("BMWE") is Plaintiff's union and his exclusive bargaining agent.

## JURISDICTION AND VENUE

6.      This Court has jurisdiction over Plaintiff's claims for relief under   28 U.S.C. §§1331, 1337, 1343, 2201, and 2202, since those claims are based in part on violations of Section 706 (f) (1) and (3) of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e-5(f) (1) and (3) ("Title VII") as well as 42 U.S.C. § 1981. Further, Defendant BMWE is subject to suit for the judicial remedy of unfair representation recognized by the National Labor Relations Board.

7.     Jurisdiction is also invoked pursuant to 28 U.S.C. §1367 granting this Court supplemental or pendent jurisdiction over the state claims under the Pennsylvania Human Relations Act and Pennsylvania common law because the state claims and federal claims are so interrelated that they are the same case or controversy under Article III of the United States Constitution.

8.     Venue is proper in this District under 28 U.S.C. Section 1391 (b) and (c) since AMTRAK and BMWE do business and have regional headquarters located in the Eastern District of Pennsylvania.  Plaintiff works in the same District.

### FULFILLMENT OF TITLE VII CONDITIONS

9.     Plaintiff has fulfilled all conditions precedent to the institution of this action against both Defendant AMTRAK under Title VII.  Charge No. 530-2017-03375 were filed with the Equal Employment Opportunity Commission ("EEOC") on or about August 14, 2017. Plaintiff has received the EEOC Right to Sue letter dated July 22, 2018 against AMTRAK. Given the fact that one year has passed since Plaintiff's dual filing, Plaintiff can now bring his Pennsylvania Human Relations Act claim.  All conditions precedent to Plaintiff's being able to bring applicable state and federal law claims have been met.  Accordingly, Plaintiff has now filed suit to enforce his federal and state civil rights claims against both defendants within ninety (90) days of receipt of the above-referenced "Right to Sue" letter.

### BACKGROUND FACTS: AMTRAK's HISTORY OF DISCRIMINAION

10.     AMTRAK in its booklet for employees makes the following statement under the heading "DISCRIMINATION."

> Amtrak will continue to be a leader in providing equal opportunity for employees in a work environment free of discrimination and harassment. As a matter of policy, we manage this company and administer our programs without regard to race, color, religion, sex, national origin, age, disability, sexual orientation or veteran's status and in conformance with all applicable federal, state and local laws.

4

> Therefore, we will not tolerate discrimination or harassment of any kind
> by our employees towards our customers or coworkers, including but not limited
> to racial, ethnic, religious or sexual slurs, whether written or spoken.

However, history has shown AMTRAK to be anything but "a leader in providing equal opportunity." To the contrary, Defendant AMTRAK has historically had an abysmal record when it comes to discrimination.

**THE CASE OF JAMES THORNTON ET AL vs. NATIONAL RAILROAD PASSENGER CORPORATION ("AMTRAK") No. Civ. A. 98-890 (EGS)**

11.     Plaintiff Whitmore's claims underline the failure of AMTRAK to follow the letter and spirit of *Thornton et al vs. National Railroad Passenger Corporation*. In April, 1998 a group of African-American AMTRAK employees and one African-American who was not hired by AMTRAK, filed a class action in the Federal District Court for the District of Columbia in the matter of *James Thornton et al vs. National Railroad Passenger Corporation ("AMTRAK")* No. Civ. A. 98-890 (EGS). They claimed that their civil rights had been violated with respect to AMTRAK's training, discipline and promotions. The Complaint alleged violations of 42 U.S.C. Section 2000d (Title VI), 42 U.S.C. Section 2000e (Title VII) and 42 U.S.C. Section 1981. After the Court dismissed the Title VI claim on or about June 24, 1998, the case was subsequently settled for $16 million and injunctive relief, subject to a consent decree that was in force until July 31, 2004. Section 5 of the consent decree was extended until July 31, 2008 as it pertained to incorporating injunctive provisions with respect to training and discipline into the collective bargaining agreement by and between AMTRAK and the Brotherhood of Maintenance of Way Employees, Division of the International Brotherhood of Teamsters executed January 17, 2008. On February 7, 2008 the Consent Decree was terminated and the case was dismissed.

12.     As recently as April 3, 2017 the Pennsylvania Federation BMWE, under the signatures of

officials Jed Dodd and Dale Bogart, put out a self-serving memo touting their role in having

"forged a campaign over many years to end the discrimination in training and qualifications."

This memo was purportedly put out because of a lack of awareness of management and union

members. Referring to the Thornton Consent Decree, BMWE states that "This consent decree

was eventually incorporated into the collective bargaining agreement in 2008. This agreement

requires standardized tests, standardized training, standardized qualifications and rank and file

members to qualify and train members on equipment." The memo concludes by stating that "In

the event you believe that Amtrak is not complying with the training and qualification terms of

the Agreement please contact an officer of the Union so that this can be investigated and

corrected." When it came to Plaintiff's repeated complaints to management and his union, both

could not have been more tone deaf to the obvious unwillingness to train Plaintiff, together with

the attendant racism in deliberately failing to do so.

---

## BACKGROUND OF DEFENDANT BROTHERHOOD OF MAINTENANCE OF WAY EMPLOYEES ("BMWE")

13.     As is required, Plaintiff is a member of Defendant Brotherhood of Maintenance of Way

Employees. ("BMWE")

14.     At all times pertinent, Mr. Jedd Dodd has been General Chairman of the Pennsylvania

Federation of BMWE. Notwithstanding Mr. Dodd's April 3, 2017 memo with respect to

discrimination in training, at all times, Mr. Dodd was unresponsive to Plaintiff's complaints

registered with him regarding blatant racial discrimination and the failure to train him.

15.     Pursuant to the applicable collective bargaining agreement, "BMWE" is solely responsible for representing. Plaintiff and responsible for standing up for Plaintiff's rights, which repeatedly has not occurred.

16.     As a fundamental matter of law, the BMWE owes Plaintiff and its members a duty of fair representation. This right was first recognized by the U.S. Supreme Court in the case of *Steele v. Louisville & Nashville Railroad*, 323 U.S. 192 (1944) where the Alabama Supreme Court had previously ruled that no remedy existed against a union guilty of racial discrimination. Eighteen years after the Supreme Court recognized a judicial remedy, the National Labor Relations Board came to recognize a parallel administrative remedy ruling in *Miranda Fuel Co.* 140 N.L.R.B. 181 (1962) enforcement denied on other grounds, 326 F.2d 172 (2d Cir. 1963). Unfair representation falls within the prohibitions of section 7 of the National Labor Relations Act.

17.     At all times, BMWE through Mr. Dodd could not be bothered with pursuing Plaintiff's' claims of discrimination when it came to his not being provided with training.

**BACKGROUND OF BRIAN D. WHITMORE & FACTS PERTAINING TO TRAINING**

18.     Plaintiff was born on April 6, 1972. After graduating from high school, spending two years at Norfolk University studying business, and then working in a plastics factory, Plaintiff began working for AMTRAK on May 10, 1999 as a trackman in a traveling gang. Starting in January of 2004 Plaintiff commenced work as a "ewe" operator, a track maintenance position where he operated various machines for various railway track maintenance gangs   that included a tamper, tie handler, regulator, spike puller, a spiker, de-clipper, and rail lifter.

19.     June 8, 2015 was Plaintiff's first day working for AMTRAK's Switch Exchange Systems ("SES") based out of 30th Street. Effective that date, Plaintiff was awarded an EWE "A"

Transport Wagon Training position.  During that first day, Plaintiff was ominously told that there was a "plan" for him. As the equipment that Plaintiff was to be operating necessitated training, Plaintiff was introduced to that "plan."

20.     On that day, or shortly thereafter, Plaintiff was introduced to his trainer, Mr. Roy Wilkins, who would not so much as acknowledge Plaintiff's existence.  Concerned that his training would be sabotaged and that other operators were not assisting him, and further concerned that others were able to hold jobs operating machinery without the requisite training, Plaintiff, repeatedly, over a period of months, related those concerns to his supervisor Tim McFarland whose response was that he had nothing to do with training. Plaintiff approached others as well, including his manager and a director who did nothing about the situation. Plaintiff then went to the training department where he met with Danny Ladislaw and Ron Nice. They did nothing. Then on several occasions Plaintiff sought out a meeting with the Superintendent of the Training Department, Maria Faulkner, without results. Finally, Plaintiff has repeatedly contacted Tyrone Nelson and Jedd Dodd of the BMWE with no results whatsoever, let alone BMWE's proceeding with a grievance in conjunction with the Thornton provisions regarding discipline provided in the Collective Bargaining Agreement.

21.     Eventually, Plaintiff contacted the AMTRAK hotline about the situation and received a confirming letter.  Clearly, Plaintiff's supervisor, Tim McFarland, learned of the hotline communication. When Plaintiff approached him on April 5, 2016, Mr. McFarland's response was "I don't ever want to talk to you. Go to a fucking lawyer!" As he was speaking in his vehicle with Plaintiff outside, Mr. McFarland rolled up his window almost smashing Plaintiff's finger.

22.     The trainer who was assigned to Plaintiff's SES unit since May, 2016 has been John Cannon, who flat out told Plaintiff that he refused to train him.  To show the low regard that

AMTRAK has for training, Plaintiff recalls that when it was necessary for someone to fill in for Mr. Cannon, AMTRAK appointed another trainer who was not experienced on the pertinent equipment.  Plaintiff then requested another trainer who was qualified and available, Alan Lewis. However, this did not occur.

23.     On June 16, 2017, Manager Anthony Civil was harassing Plaintiff at work by following him into the bathroom and otherwise shadowing Plaintiff, which resulted in a shouting match. Plaintiff notified Mr. McFarland who told him to stay away from Mr. Civil.  This harassment continued from Mr. Civil on July 10 and then again on August 16. On July 14 and then again August 17, Plaintiff contacted the AMTRAK hotline. As a result, Plaintiff was further retaliated against, as only weeks after he had a September 20, 2017 meeting with Mr. John Cavanaugh concerning this was Plaintiff removed from his position.

24.     Plaintiff was warned that exercising his rights would be detrimental to his career. His one- time boss, Rocco Smith told Plaintiff that he had a "bulls-eye" on his head and that Plaintiff was stirring things up and making too many telephone calls. Plaintiff's response was "How can I come to work every day and feel safe?"

25.     Plaintiff has repeatedly secured positions in the SES unit that required training. If training did not occur, typically within approximately 16 months, then Plaintiff would be removed from the position by AMTRAK's abolishment of the position. Then the position would be posted again. Plaintiff would have to then secure another position based upon his seniority.

26.     The first position that Plaintiff secured at SES, as referenced above, was an EWE "A" Transport Wagon Training position, effective June 8, 2015 This piece of equipment was commonly referred to as a "Romper Wagon", consisting of a crane atop a wagon that could transport it from track to track. The crane reaches up for two stories and reaches out for one

9

story. At a few times, qualified operators would allow Plaintiff to run it under their supervision. Plaintiff feared for his own safety and the safety of others as he had heard about crane accidents before he was on the SES gang, that included one of the legs of the crane giving out. Once on the gang, Plaintiff learned that Mr. Robert Harris had his wrist broken when a safety pin shot out. Plaintiff recognized the importance of training and repeatedly made requests, but was never trained.  Despite the Collective Bargaining requirement of training, Plaintiff was deprived of training. Subsequently Plaintiff received a letter from FJ. Kruse, Senior Manager, Training Development, dated March 22, 2017 that he was to immediately vacate this position. Mr. Kruse has gained a reputation as a racist who threatened and interfered with a black witness in the federal civil case of Robinson vs. AMTRAK and BMWE.

27.      The second position that Plaintiff secured at SES was that of a port crane operator. He received the position on May 22, 2017, requested the requisite training, and never received it. On September 12, 2017, trainer John Cannon asked Plaintiff to demonstrate the operation of the equipment. Plaintiff said that he had not been trained. Mr. Cannon responded that Plaintiff had been given the manual. Plaintiff, in turn, said that being trained is something different from being given a manual. Mr. Cannon proceeded to quiz Plaintiff on the equipment, setting him up for failure. Then, as before, Plaintiff was subsequently removed from that position by management on September 20,2017.  The replacement for Plaintiff in this position was Mark Griffin, a white who Messrs. McFarland and John Cannon qualified for the position without training.

28.      As recently as April 20, 2018, Plaintiff went to the Training Department and met with Steve Ladislaw, who coincidentally seems to have taken over his father's job. This is characteristic of the nepotism at AMTRAK.   Mr. Ladislaw heard Plaintiff out and then assured him that he would look into matters. However, like father, like son, Plaintiff never heard back.

29.     Plaintiff is well aware of the atmosphere of discrimination that pervades AMTRAK, particularly with respect to management's treatment of blacks involved with maintenance. Whites can call blacks "niggers.". There is a double standard where lack of training disqualifies blacks for certain positions, yet whites are allowed to fill such positions without training. Whites can miss time and blacks who do the same are penalized. Whites can even sit idly by at job site and get paid when blacks have to work.  Whites earn overtime and blacks cannot. Whites can damage machinery and management shoves the matter under the rug. As another example, whites can repeatedly fail the NORAC exam without having their positions abolished.   The same disparities exist between the races when it comes to discipline, seniority and promotion.

30.     Recently, a white member of the TLS/CLIPPING gang, John Pekarovich was allowed to refer to a black as a" nigger". His only discipline was a letter of reprimand and being put out of service for two days with pay and then reassigned. He clearly got a free ride.

31.     As recently as October 4, 2018, black employees protested Production Director Joe Kavanaugh's racially denigrating methods in highlighting a black woman as being a cheat in terms of not paying for passage and circulating a picture of her. Aside from the fact that such instances are frequent with respect both to black and white freeloading passengers, there was no purpose whatsoever for this to be highlighted in a production team meeting.

32.     Plaintiff is also aware of the claims of others that BMWE favors whites as opposed to blacks, when it comes to the union's advocacy and representation. Plaintiff avers that BMWE's total lack of interest in his claims amounts to its failure of representation.

33.     At all times pertinent, Plaintiff was cooperative in his various positions and available for training.

34.     At all times pertinent, Plaintiff complained to management about failure to train and harassment on the job.

35.      At all times pertinent, Plaintiff repeatedly called the Amtrak hotline without results.

36.     At all times pertinent, Plaintiff repeatedly complained to Defendant BMWE

37.     At all times pertinent, Plaintiff felt that he was being targeted and retaliated against by management because he was exercising his rights, disrupting not only his work life but also his family life.

38.     Each time that Plaintiff was put out of his position he lost pay, lost time and overtime and the opportunity of career advancement.

## COUNT I

### VIOLATION OF THE CIVIL RIGHTS ACT OF 1866, 42 U.S.C. § 1981

### BRIAN D. WHITMORE v. AMTRAK

39.     Plaintiff restates and realleges paragraphs 1 through 38 as though set forth here in full.

40.     Defendant AMTAK has discriminated against the named Plaintiff by denying him the same rights as are enjoyed by white employees with respect to performance, terms, location, conditions, benefits, privileges, promotion, discipline and emoluments of their employment relationship with AMTRAK, in violation of the Civil Rights Act of 1866, 42 U.S.C. § 1981.

41.     AMTRAK's conduct has been intentional, deliberate, willful, and conducted in callous disregard of the rights of the named Plaintiff.

42.     By reason of the continuous nature of AMTRAK's discriminatory conduct, persistent throughout the employment of the named Plaintiff, he is entitled to application of the continuing violation doctrine to all of the violations alleged herein.

43.     By reason of AMTRAK's discrimination, the named Plaintiff is entitled to all legal and equitable remedies available under § 1981, including but not limited to damages for mental anguish and punitive damages.  Plaintiff is also entitled to award of all relief available under 42 U.S.C §1988.

## COUNT II

### VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964, AS AMENDED, 42 U.S.C. § 2000e *et seq* RACIAL DISCRIMINATION and MAINTENANCE OF A HOSTILE WORK ENVIRONMENT

### BRIAN D. WHITMORE v. AMTRAK

44.     Plaintiff restates and realleges paragraphs 1 through 43 as though set forth here in full.

45.     Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000, et seq. as amended by the Civil Rights Act of 1991 ("Title VII), makes it unlawful for employers and labor organizations to discriminate against any individual in the terms, conditions, or privileges of employment on the basis of race.

46.     Discrimination on the basis of race that creates an abusive and hostile work environment, such that the conditions of employment are altered, is actionable under Title VII as racial discrimination. In order to establish a hostile work environment, five factual elements must be established: (1) that the employee suffered intentional discrimination because of his or her race; (2) that the discrimination detrimentally affected him or her; (3) that the discrimination was pervasive and regular; (4) that the discrimination would detrimentally affect a reasonable person in the same position as the employee; and (5) that respondeat superior liability exists. In the totality of circumstances described in the Background Facts, the foregoing five elements are established.

13

47.    AMTRAK is liable for discrimination alleged herein under the doctrine of *respondeat superior* due to the actions and statements of their respective managers and employees.

48.    AMTRAK is liable for the acts of their respective management, members and Plaintiff's co-workers, because each entity knew of their proclivities permitting discrimination and a hostile work environment to exist, but did nothing about it.

49.    AMTRAK is liable for the acts alleged herein because their respective board and managers established the corporate culture at AMTRAK which encouraged racial discrimination, harassment and retaliation.

50.    Based upon the foregoing facts, AMTRAK has discriminated against Plaintiff on the basis of his race, retaliated against him for standing up for himself and having deprived him of his rights in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e et. seq. as amended.

51.    AMTRAK's conduct has been disparate, intentional, deliberate, willful and conducted in callous disregard of the rights of the Plaintiff.

52.    AMTRAK's policies and/or practices have produced a disparate impact against the named Plaintiff with respect to the terms and conditions of his employment.

53.    By reason of AMTRAK's discrimination, the named Plaintiff is entitled to all legal and equitable remedies available.

## COUNT III

### RACIAL DISCRIMINATION AND MAINTENANCE OF A HOSTILE WORK ENVIRONMENT
### IN VIOLATION OF THE PENNSYLVANIA HUMAN RELATIONS ACT

### BRIAN D. WHITMORE v. AMTRAK

54.    Plaintiff restates and realleges paragraphs 1 through 53 as though set forth here in full.

14

55.     The Pennsylvania Human Relations Act, 43 P.S. § 955 et seq., makes it unlawful to discriminate against any individual in the terms, conditions, or privileges of employment on the basis of race.

56.     Racial discrimination that creates an abusive and hostile work environment, such that the conditions of employment are altered, is actionable under the Pennsylvania Human Relations Act as race discrimination.

57.     With respect to allegations of discrimination and retaliation, AMTRAK as Plaintiff's employer is strictly liable for the acts of its supervisory management employees, because the harassers and those who effectuated the discrimination used their actual or apparent authority to further the unlawful conduct, and were otherwise aided in accomplishing the unlawful conduct by the existence of an agency relationship.

58.     AMTRAK is liable for the acts of management and co-workers of Plaintiff.  AMTRAK deliberately failed to follow established procedure, investigate Plaintiff's situation, bring charges against those responsible, and otherwise rectify Plaintiff's situation. Instead it scapegoated and repeatedly penalized Plaintiff due to his race and retaliation against him as a result of his complaints in standing up for himself.

59.     AMTRAK is liable for the acts alleged herein because its managers and supervisors established its corporate culture which encouraged racial discrimination as well as a hostile work environment.

60.     Based upon the foregoing facts, AMTRAK has discriminated against Plaintiff on the basis of their race and have deprived them of their rights in violation of the Pennsylvania Human Relations Act, 43 P.S. § 955 et. seq.

61.     As a result of such conduct by AMTRAK and BMWE, Plaintiffs have suffered damages as a consequence of AMTRAK's and BMWE's illegal conduct.

62.     The described unlawful employment practices by AMTRAK were intentional and were done with malice or reckless indifference to Plaintiff's rights protected by the laws of the Commonwealth of Pennsylvania.  These unlawful acts were committed because of his race and the fact that he stood up for himself in opposition to illegal practices directed against him.

63.     AMTRAK's actions have caused Plaintiffs to suffer injury and damages in contravention of the laws of the Commonwealth of Pennsylvania.

## COUNT IV

## FAILURE TO OBSERVE DUTY OF FAIR REPRESENTATION

## BRIAN D. WHITMORE v. BMWE

64.     Plaintiff restates and realleges paragraphs 1 through 63 as though set forth here in full.

65.     First, pursuant to the common law and then pursuant to Section 7 of the National Labor Relations Act, 29 U.S.C. Section 151 et seq., BMWE, as Plaintiff's union, owes him a duty of fair representation in any and all matters affecting his employment. According to the NLRB the duty applies to virtually every action that a union may take in dealing with an employer as Plaintiff's representative.

66.     The duty of fair representation is the legal duty of a union to equally, and in good faith, fairly and impartially represent every employee in a bargaining unit, regardless of whether the employee is a union member or not.

67.     The duty arises out of the exclusive representative status that BMWE holds with respect to Plaintiff and employer AMTRAK.

68.     The duty requires three things on the part of a union: all members' interest must be served without hostility or discrimination, discretion must be exercised with good faith and honesty; and the union must not act in an arbitrary fashion.

69.     The duty of fair representation is not pre-empted by Title VII.

70.     BMWE's treatment of Plaintiff can only be characterized as evidencing fraud, deceit, and dishonest conduct robbing him of his rights to training.  At all times BMWE has acted in an arbitrary, perfunctory and inexcusable fashion with discriminatory animus against Plaintiff.

71.     Given BMWE's behavior, BMWE is liable to Plaintiff for consequential damages including intentional infliction of emotional distress and attorney's fees together with equitable relief as is appropriate

72.     Defendant BMWE is liable for the acts alleged herein because its managers and supervisors established the corporate culture respectively, which encouraged the improper behavior directed at Plaintiff.

## RELIEF REQUESTED

This civil action seeks on behalf of Plaintiffs, legal and equitable relief including:

a.     A declaratory judgment declaring that AMTRAK has illegally discriminated against Plaintiff because of the color of his skin in violation of 42 U.S.C.§ 1981, Title VII of the 1964 Civil Rights Act, as amended 42 U.S.C. § 2000e et seq., the Pennsylvania Human Relations Act and Pennsylvania Common Law.

b.     An appropriate remedial order, granting injunctive relief, directing and requiring the following:

i.     Appointment of a civil rights monitor or trustee over AMTRAK's operations, fully empowered to implement any injunctive relief issued by this Court, to oversee any and all

17

AMTRAK employment practices until such time as AMTRAK no longer discriminates against African American employees.

    ii.    Appointment of a civil rights monitor or trustee over BMWE's operations, fully empowered to implement any injunctive relief issued by this Court, to oversee any and all BMWE practices until such time as BMWE adequately represents African American employees.

    iii.    Cease and desist directed to both Defendants of all acts of proscribed racial discrimination as required pursuant to 42 U.S.C. Section 1981.

    iv.    Such other remedial action as is needed to enforce compliance with all relevant standards of non-discrimination on the basis of race or color.

    v.    Funds representing what would account for reinstatement of seniority and benefits with back and front pay for Plaintiff.

    vi.    Reinstatement of seniority and benefits with back and front pay for Plaintiff and payment of compensatory and punitive damages, together with attorney's fees and the costs of suit in excess of $150,000, in an amount to be determined at trial pursuant to Title VII, 28 U.S.C. § 1981 and Title VII.

    vii.  Payment of compensatory damages, together with attorney's fees and the costs of suit to Plaintiffs in excess of $150,00 in an amount to be determined at trial against Defendant BMWE for violation of its duty of fair representation.

    viii.  Payment of compensatory damages, together with attorney's fees and the costs of suit to Plaintiff pursuant to the Pennsylvania Human Relations Act.

    f.  Such other and further relief as the Court may deem just and proper.

g.  Retention of jurisdiction by this Court until such time as the Court is satisfied that

AMTRAK has remedied the practices complained of herein and are determined to be in full

compliance with the law.

### **JURY DEMAND**

The Plaintiffs demand trial by jury of all issues triable of right to a jury.


Respectfully submitted this 16th day of October, 2018


                                       */s/ Mark D. Schwartz*
                                     Mark D. Schwartz, Esquire
                                     P.O. Box 330
                                     Bryn Mawr, PA  19010-0330
                                     Telephone & Fax: 610 525-5534
                                     Email: MarkSchwartz6814@gmail.com
                                     Pa. I.D. #30527


                                     Attorney for Plaintiff,
                                     Brian D. Whitmore

## VERIFICATION

I, BRIAN D. WHITMORE, do hereby verify that I am the Plaintiff in this matter and that the facts contained in the foregoing Plaintiff's Complaint are true and correct to the best of my knowledge, information and belief.  I further understand that these statements are made subject to the penalties of 18 Pa. C.S. Section 4904 relating to unsworn falsification to authorities.

10/16/2018
DATE

Brian D. White
BRIAN D. WHITMORE