# IN THE UNITED STATES DISTRICT COURT

## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **BRIAN D. WHITMORE**<br>**8390 Crofton Lane**<br>**Merchantville, NJ 08109**<br>        **Plaintiff** | **CIVIL ACTION**<br><br>**NO.** */8cv4447*<br><br>**JURY TRIAL DEMANDED** |
| **v.** | |
| **NATIONAL RAILROAD PASSENGER**<br>**CORPORATION, d/b/a "AMTRAK"**<br>**60 Massachusetts Ave, NE**<br>**Washington, DC 20002**<br>        **Defendant** | **FIRST AMENDED COMPLAINT** |
| **And** | |
| **BROTHERHOOD OF MAINTENANCE OF**<br>**WAY EMPLOYEES**<br>**30th and Market Street**<br>**Philadelphia, PA 19104**<br>        **Defendant** | |



FILED

MAR 08 20.J

## FIRST AMENDED COMPLAINT

1.    Mr. Brian D. Whitmore, by his lawyer Mark D. Schwartz, Esquire avers as follows:

### NATURE OF THIS ACTION

2.    Plaintiff Brian D. Whitmore ("Whitmore"), is employed by National Railroad Passenger Corporation d/b/a "AMTRAK" ("AMTRAK"). He seeks to recover damages under 42 U.S.C.§ 1981 ("Section 1981"), Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e, ("Title VII") and the Pennsylvania Human Act ("PHRA") caused by AMTRAK as a result of unlawful employment practices consisting of discriminating against Plaintiff on account of race and depriving him of career advancement, by virtue of his being placed in various positions which he subsequently was forced to forfeit as a result of AMTRAK's refusal to train him. Plaintiff has

repeatedly complained to management about this situation and has been retaliated against without any alleviation of the situation.

This law suit is the partial result of dual filings with the Equal Employment Opportunity Commission ("EEOC") and Pennsylvania Human Relations Commission. ("PaHRC") against AMTRAK. Plaintiff seeks declaratory and injunctive relief, back pay, front pay, compensatory and punitive damages, where applicable, together with attorneys' fees, costs and expenses of this suit to redress the effects of AMTRAK's pervasive and racially discriminatory employment policies, practices and procedures.

Plaintiff has also repeatedly lodged complaints and grievances with his union, defendant BMWE, after which it has ignored and brushed aside his complaints and grievances, and offered no advocacy towards remedy or results. This is consistent with BMWE and Chairman Jedd Dodd's disfavor of other African-Americans, in general, and Mr. Whitmore in particular. As a result, this lawsuit is also filed against the Brotherhood of Maintenance Way Employees ("BMWE") for breach of its duty of fair representation required by the National Labor Relations Board, pursuant to the National Labor Relations Act, 61 Stat.156, as amended, the Railway Labor Act, 44 Stat. 577 (1926), as amended , and court decision. Plaintiff's Complaint also includes a count against BMWE for damages as a result of racial discrimination pursuant to 42 U.S.C.§ 1981 ("Section 1981").

## PARTIES

3.     Plaintiff, Brian D. Whitmore ("Whitmore" or "Plaintiff "), is an adult African-American male who resides at 8390 Crofton Lane, Merchantville, NJ 08109. At the times pertinent to this Complaint he was an employee of AMTRAK based out of its Philadelphia, Pennsylvania station and facility, serving what is known as AMTRAK's "Northeast Corridor". As an African-

2

American male, he a member of a protected category of individuals under pertinent civil rights statutes.

4.     Defendant, National Railroad Passenger Corporation ("AMTRAK"), according to the US Department of Transportation's website, "is a for-profit corporation that operates intercity passenger rail services in 46 States and the District of Columbia, in addition to serving as a contractor in various capacities for several commuter rail agencies" Further it is noted that "Amtrak was created by Congress in the Rail Passenger Service Act of 1970 and incorporated in the District of Columbia in 1971, assuming the common carrier obligations of the private railroads (which found passenger service to be generally unprofitable) in exchange for the right to priority access of their tracks for incremental cost." AMTRAK's Board of Directors sets corporate policy and oversees the management of the company. The board is made up of seven (7) voting members appointed for five-year terms by the President with the advice and consent of the Senate. The President has appointed the Secretary of Transportation as one of the board members. AMTRAK receives subsidy from both the Federal Government and the State of Pennsylvania.

At all relevant times, Employer has continuously been engaged in an industry affecting commerce within the meaning of Sections 701(b), (g) and (h) of Title VII, 42 U.S.C. §§2000e (b), (g) and (h).

5.     Defendant Brotherhood of Maintenance of Way Employees ("BMWE") is Plaintiff's union and his exclusive bargaining agent.

## JURISDICTION AND VENUE

6.     This Court has jurisdiction over Plaintiff's claims for relief under 28 U.S.C. §§1331, 1337, 1343, 2201, and 2202, since those claims are based in part on violations of Section 706 (f)

3

(1) and (3) of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e-5(f) (1) and (3) ("Title VII") as well as 42 U.S.C. § 1981. Further, Defendant BMWE is subject to suit for the judicial remedy of unfair representation recognized by the National Labor Relations Board pursuant to the National Labor Relations Act, the Railway Labor Act, and Court decision as set forth in detail at paragraph 16 hereinbelow.

7.      Jurisdiction is also invoked pursuant to 28 U.S.C. §1367 granting this Court supplemental or pendent jurisdiction over the state claims under the Pennsylvania Human Relations Act and Pennsylvania common law because the state claims and federal claims are so interrelated that they are the same case or controversy under Article III of the United States Constitution.

8.      Venue is proper in this District under 28 U.S.C. Section 1391 (b) and (c) since AMTRAK and BMWE do business and have regional headquarters located in the Eastern District of Pennsylvania. Plaintiff works in the same District.

## FULFILLMENT OF TITLE VII CONDITIONS

9.      Plaintiff has fulfilled all conditions precedent to the institution of this action against both Defendant AMTRAK under Title VII. Charge No. 530-2017-03375 were filed with the Equal Employment Opportunity Commission ("EEOC") on or about August 14, 2017. Plaintiff has received the EEOC Right to Sue letter dated July 22, 2018 against AMTRAK. Given the fact that one year has passed since Plaintiff's dual filing, Plaintiff can now bring his Pennsylvania Human Relations Act claim. All conditions precedent to Plaintiff's being able to bring applicable state and federal law claims have been met. Accordingly, Plaintiff has now filed suit to enforce his federal and state civil rights claims against both defendants within ninety (90) days of receipt of the above-referenced "Right to Sue" letter.

4

## BACKGROUND FACTS: AMTRAK'S HISTORY OF DISCRIMINATION

10.     AMTRAK in its booklet for employees makes the following statement under the

heading "DISCRIMINATION."

> Amtrak will continue to be a leader in providing equal opportunity for
> employees in a work environment free of discrimination and harassment. As a
> matter of policy, we manage this company and administer our programs without
> regard to race, color, religion, sex, national origin, age, disability, sexual
> orientation or veteran's status and in conformance with all applicable federal,
> state and local laws.

> Therefore, we will not tolerate discrimination or harassment of any kind
> by our employees towards our customers or coworkers, including but not limited
> to racial, ethnic, religious or sexual slurs, whether written or spoken.

However, history has shown AMTRAK to be anything but "a leader in providing equal

opportunity." To the contrary, Defendant AMTRAK has historically had an abysmal record

when it comes to discrimination.

## THE CASE OF JAMES THORNTON ET AL vs. NATIONAL RAILROAD PASSENGER CORPORATION ("AMTRAK") No. Civ. A. 98-890 (EGS)

11.     Plaintiff Whitmore's claims underline the failure of AMTRAK to follow the letter and

spirit of *Thornton et al vs. National Railroad Passenger Corporation.*  In April, 1998 a group of

African-American AMTRAK employees and one African-American who was not hired by

AMTRAK, filed a class action in the Federal District Court for the District of Columbia in the

matter of *James Thornton et al vs  National Railroad Passenger Corporation ("AMTRAK")* No.

Civ. A. 98-890 (EGS). They claimed that their civil rights had been violated with respect to

AMTRAK's training, discipline and promotions.  The Complaint alleged violations of 42 U.S.C.

Section 2000d (Title VI), 42 U.S.C. Section 2000e (Title VII) and 42 U.S.C. Section 1981. After

the Court dismissed the Title VI claim on or about June 24, 1998, the case was subsequently

settled for $16 million and injunctive relief, subject to a consent decree that was in force until

July 31, 2004. Section 5 of the consent decree was extended until July 31, 2008 as it pertained to incorporating injunctive provisions with respect to training and discipline into the collective bargaining agreement by and between AMTRAK and the Brotherhood of Maintenance of Way Employees, Division of the International Brotherhood of Teamsters executed January 17, 2008. On February 7, 2008 the Consent Decree was terminated and the case was dismissed.

12.     As recently as April 3, 2017 the Pennsylvania Federation BMWE, under the signatures of officials Jed Dodd and Dale Bogart, published a self-serving memo touting their role in having "forged a campaign over many years to end the discrimination in training and qualifications." This memo was purportedly published because of union concern over a present day lack of awareness of BMWE union members when it came to their rights which arose as a result of the Thornton Consent Decree and its incorporation into pertinent collective bargaining agreements. Referring to the Thornton Consent Decree, BMWE states that "This consent decree was eventually incorporated into the collective bargaining agreement in 2008. This agreement requires standardized tests, standardized training, standardized qualifications and rank and file members to qualify and train members on equipment." The memo concludes by stating that "In the event you believe that Amtrak is not complying with the training and qualification terms of the Agreement please contact an officer of the Union so that this can be investigated and corrected." When it came to Plaintiff's repeated complaints to AMTRAK's management and to BMWE, that when it came to training and qualification terms of the Agreement, AMTRAK and the BMWE were not in compliance with the Agreement, both parties were wholly unresponsive and, in fact, tone deaf and retaliatory to Plaintiff when it came to the obvious unwillingness to train Plaintiff. Despite Plaintiff's advocating for his rights, both AMTRAK and BMWE have exhibited racism towards Plaintiff in deliberately depriving him of his right to training and

6

retaliating against him for asserting his rights.

- — — - — — — — — — - — — — - — — — - — — — - — — — - -

## BACKGROUND OF DEFENDANT BROTHERHOOD OF MAINTENANCE OF WAY EMPLOYEES ("BMWE")

13.     As is required, Plaintiff is a member of Defendant Brotherhood of Maintenance of Way Employees ("BMWE"). He has no choice in the matter.

14.     At all times pertinent, Mr. Jedd Dodd has been General Chairman of the Pennsylvania Federation of BMWE followed by Mr. Anthony Sessa, who assumed that position upon Mr. Dodd's promotion within the union structure. Notwithstanding Mr. Dodd's April 3, 2017 memo with respect to discrimination in training, at all times, Mr. Dodd and other union representatives were unresponsive to Plaintiff's complaints registered with him regarding blatant racial discrimination and the failure to train him. This is consistent with the blatantly racist behavior of the very same union complained of by William Robinson in the litigation that he filed against AMTRAK and BMWE that can be found at 2:18-CV-00341 in this very same Eastern District of Pennsylvania. Moreover, it is consistent with the deposition testimony in that case, not only of Plaintiff William Robinson in that case, but also the deposition testimony taken therein of Amtrak Supervisor Maurice Robinson (no relative), one of the few black supervisors who testified as to blatant racism prevalent with respect to both AMTRAK and BMWE.

15.     Pursuant to the applicable collective bargaining agreement, "BMWE" is solely responsible for representing. Plaintiff and responsible for standing up for Plaintiff's rights, which repeatedly has not occurred.

16.     As a fundamental matter of law, the BMWE owes Plaintiff and its members a duty of fair representation. This right was first recognized by the U.S. Supreme Court in the case of

7

*Steele v. Louisville & Nashville Railroad*, 323 U.S. 192 (1944) where the Alabama Supreme Court had previously ruled that no remedy existed against a union guilty of racial discrimination. Eighteen years after the Supreme Court recognized a judicial remedy, the National Labor Relations Board came to recognize a parallel administrative remedy ruling in *Miranda Fuel Co.* 140 N.L.R.B. 181 (1962) enforcement denied on other grounds, 326 F.2d 172 (2d Cir. 1963). Unfair representation falls within the prohibitions of section 7 of the National Labor Relations Act.

17.     At all times, BMWE, through Mr. Dodd and other union representatives refused to act in response to Plaintiff's' claims of blatant racial discrimination when it came to his not being provided with training. What is more, in reaction to those claims, BMWE retaliated against Plaintiff for doing so by not invoking the clear protection of the Collective Bargaining Agreement.

## **BACKGROUND OF BRIAN D. WHITMORE & FACTS PERTAINING TO TRAINING**

18.     Plaintiff was born on April 6, 1972. After graduating from high school, spending two years at Norfolk University studying business, and then working in a plastics factory, Plaintiff began working for AMTRAK on May 10, 1999 as a trackman in a traveling gang. Starting in January of 2004 Plaintiff commenced work as a "ewe" operator, a track maintenance position where he operated various machines for various railway track maintenance gangs that included a tamper, tie handler, regulator, spike puller, a spiker, de-clipper, and rail lifter.

19.     June 8, 2015 was Plaintiff's first day working for AMTRAK's Switch Exchange Systems ("SES") based out of 30th Street Station in Philadelphia. Effective that date, Plaintiff was awarded an EWE "A" Transport Wagon Training position. Just three or four days prior to his start date Plaintiff was ominously told by Amtrak employee Yarin Williams that there was a

8

"plan" for him. Plaintiff understood this comment as having racial connotations. As the equipment that Plaintiff was to be operating necessitated training, Plaintiff was introduced to that "plan" which was to deny him the requisite training and have him removed from the position on the basis of race.

20.    On that day, or shortly thereafter, Plaintiff was introduced to his trainer, Mr. Roy Wilkins, who would not so much as acknowledge Plaintiff's existence. Concerned that his training would be sabotaged and that other operators were not assisting him due to racial discrimination, and further concerned that other Caucasian individuals were able to hold jobs operating machinery without the requisite training, Plaintiff, repeatedly, over a period of months, related those concerns to his supervisor Tim McFarland whose response was that he had nothing to do with training. Plaintiff approached others as well, including his manager, Anthony Civil, who did nothing about the situation. Plaintiff then went to the training department where he met with Danny Ladislaw and Ron Nice. They did nothing. Then on several occasions Plaintiff sought out a meeting with the Superintendent of the Training Department, Maria Faulkner, without results. Finally, Plaintiff has repeatedly contacted Tyrone Nelson, Jedd Dodd, and other BMWE officials with no results whatsoever, let alone BMWE's proceeding with a grievance in conjunction with the Thornton provisions regarding discrimination provided in the Collective Bargaining Agreement.

For example, on December 16, 2015 Plaintiff emailed Jedd Dodd, BMWE local chairman as follows:

> Hello Jed this is Brian Whitmore I need to speak with you ASAP pertaining to the trainer Roy Wilkes. I've been in SES since June 8[th] I was awarded training on the transport wagon. Since June Roy never trained me nor he gave me the opportunity to run the machine. Please call me 267-357-1536.

9

Rather than return Plaintiff's call or otherwise effectuate his responsibility of representation, Mr. Dodd, emailed Plaintiff that day:

> You would be better served by contracting Tyrone Nelson who is the Vice Chairman with immediate jurisdiction over this issue. His phone number is 267 432 0948 and his email is on the cc. By copy of this email I am asking Vice Chairman Nelson to contact you.

Mr. Nelson never contacted Mr. Whitmore and ignored Plaintiff's repeated efforts to contact him.

Notwithstanding, Plaintiff persisted and attempted to contact other BMWE representatives. On December 15, 2016, Plaintiff texted union representative Thomas Wahanka asking him to give him a call. No return call was received. Then, on January 26, 2017, Plaintiff texted to Mr. Wahanka the following:

> Why I couldn't work last night if all the operators including the other trainee worked? This is what I texted Tim McFarlane. This is what I've been going through since I came to SES it's so frustrating dealing with the things I go through in this gang.

Mr. Wahanka's response the next day was that he was in a meeting and needed to call him back.

Plaintiff response on January 27, 2017 was:

> I'm so tired of dealing with this it's very hard to keep my composure. It's difficult to keep taking all the bull shit without blowing my cool and losing my job. The most frustrating part of what I've been through and still going thru is that I have no one in Amtrak to go to everyone turns the eye on the truth they just protect Roy.... Very Very frustrating. .....

Thereafter, Plaintiff tried without success to reach other union representatives to advocate for him under the collective bargaining agreement.

21.     Eventually, Plaintiff contacted the AMTRAK hotline about the situation and received a confirming letter. Clearly, Plaintiff's supervisor, Tim McFarland, learned of the hotline communication. When Plaintiff approached him on April 5, 2016, Mr. McFarland's response

was "I don't ever want to talk to you. Go to a fucking lawyer!" As he was speaking in his vehicle with Plaintiff outside, Mr. McFarland rolled up his window almost smashing Plaintiff's finger.

22.    The trainer who was assigned to Plaintiff's SES unit since May, 2016 has been John Cannon, who flat out told Plaintiff that he refused to train him. To show the low regard that AMTRAK has for training, acquiesced in by BMWE, Plaintiff recalls that when it was necessary for someone to fill in for Mr. Cannon, AMTRAK appointed another trainer who was not experienced on the pertinent equipment. Plaintiff then requested another trainer who was qualified and available, Alan Lewis. However, this did not occur as management refused to allow Mr. Lewis to train Plaintiff.

23.    On June 16, 2017, Manager Anthony Civil was harassing Plaintiff at work by following him into the bathroom and otherwise shadowing Plaintiff, which resulted in a shouting match. Plaintiff notified Mr. McFarland who told him to stay away from Mr. Civil. This harassment continued from Mr. Civil on July 10 and then again on August 16. On July 14 and then again August 17, Plaintiff contacted the AMTRAK hotline. As a result, Plaintiff was further retaliated against, as only weeks after he had a September 20, 2017 meeting with Mr. John Cavanaugh concerning this was Plaintiff removed from his position.

24.    As early as December, 2015, Plaintiff was warned that exercising his rights would be detrimental to his career. His one- time boss, Rocco Smith told Plaintiff that he had a "bulls-eye" on his head and that Plaintiff was stirring things up and making too many telephone calls. Plaintiff interpreted this as having a racial overtone. Plaintiff's response was "How can I come to work every day and feel safe?"

25.    Plaintiff has repeatedly secured positions in the SES unit that required training. If training did not occur, typically within approximately 16 months, then Plaintiff would be removed from

11

the position by AMTRAK's abolishment of the position. Then the position would be posted again. Plaintiff would have to then secure another position based upon his seniority. This is what has repeatedly transpired with respect to Plaintiff and continues to this day.

26.     The first position that Plaintiff secured at SES, as referenced above, was an EWE "A" Transport Wagon Training position, effective June 8, 2015. This piece of equipment was commonly referred to as a "Romper Wagon", consisting of a crane atop a wagon that could transport it from track to track. The crane reaches up for two stories and reaches out for one story. At a few times, qualified operators would allow Plaintiff to run it under their supervision. Plaintiff feared for his own safety and the safety of others as he had heard about crane accidents before he was on the SES gang, that included one of the legs of the crane giving out. Once on the gang, Plaintiff learned that Mr. Robert Harris had his wrist broken when a safety pin shot out. Plaintiff recognized the importance of training and repeatedly made requests, but was never trained. Plaintiff affirmatively asked Mr. Al Lewis, an SES trainer, to schedule a training session. Mr. Lewis said that he would but that he had to first run it by his boss who was Rocco Smith. According to Mr. Lewis, Mr. Smith told him to mind his business and stay away from Plaintiff's situation. Despite the Collective Bargaining requirement of training, Plaintiff was deprived of training. Subsequently Plaintiff received a letter from FJ. Kruse, Senior Manager, Training Development, dated March 22, 2017 that he was to immediately vacate this position. Upon information and belief Mr. Kruse retaliated against Plaintiff because of his race. In the runup to his March, 2017 removal Plaintiff texted Mr. Wahanka of BMWE to call him and redress the situation without success.

27.     The second position that Plaintiff secured at SES was that of a port crane operator. He received the position on May 22, 2017, requested the requisite training, and never received it.

12

Union representative Wahanka was asked to call Plaintiff on September 11, 2017 with no response. On August 23, 2017 Plaintiff attended a meeting with Production Manager Joe Kavanaugh, Tyrone Nelson and Anthony Civil with respect to Plaintiff's claims that Mr. Civil was harassing him. At that meeting Mr. Kavanaugh told Plaintiff that he knew that Plaintiff felt unsafe and spoke about his training issues. Plaintiff felt that something might finally be done. On September 12, 2017, trainer John Cannon asked Plaintiff to demonstrate the operation of the equipment. Plaintiff said that he had not been trained. Mr. Cannon responded that Plaintiff had been given the manual. Plaintiff, in turn, said that being trained is something different from being given a manual. Mr. Cannon proceeded to quiz Plaintiff on the equipment, setting him up for failure. The day before, September 11, 2017, Plaintiff texted Mr. Wahanka to please call him. Receiving no response, then on September 12, 2017 Plaintiff texted Mr. Wahanka the following:

> Today the trainer john cannon wanted me to show him the operation of the equipment I told him that I was never shown that but he insisted that beings tho I was given a manual I should know how to run it. I told him that reading the manual and being trained on it is separate he never even showed me n...................

> It's very ironic that I had a meeting 2 weeks ago with John Cavanaugh pertaining to Anthony Civil harassing me my job will be abolished on September 20th I strongly believe that this is an act of retaliation from Anthony Civil and higher. After leaving that meeting I feared for my job and now look what transpired. All I ask is that I get treated fairly and trained properly and not be retaliated against but I see that's not the case.

This text was followed by subsequent texts by Plaintiff to Mr. Wahanka without response.

28.     Knowing that his position was to be abolished, Plaintiff called the AMTRAK Hotline on September 12, 2017 and spoke to "Bonnie" about the failure to train. This generated report # 170912004198 of 2:20 p.m. that day.

13

29.     Then, as before, Plaintiff was subsequently removed from that position by management on

September 20, 2017. The replacement for Plaintiff in this position was Mark Griffin, a

Caucasian male whom Messrs. McFarland and John Cannon qualified for the position without

training.

30.     Notwithstanding his removal from the position, knowing that his mistreatment was a

continuing practice that would repeatedly recur, Plaintiff continued to protest. He called Mr.

Kavanaugh with whom he had met only weeks before when Plaintiff had hoped that Mr.

Kavanaugh might get him the requisite training. However, on the telephone call, Mr. Kavanaugh

said "I don't want anything to do with it. Take it up with the union." On February 23, 2018 he

wrote to Mr. Anthony Sessa who had replaced Jedd Dodd as Chairman of the Union:

> To whom it may concern:
>
> I Brian Whitmore was awarded subject to training on the Romper Wagon June
> 2015. I was in the position without any training at all. I notified everyone about
> by situation nothing was done about it. In 2016 John Cannon became my new
> trainer once again I was never ever trained my job was eventually abolished. In
> 2017 I was awarded the PK2 position subject to training once again. John Cannon
> refused to train me my job was abolished for the second time. I was in SES for 2
> plus years and and [sp] I was never afforded proper training at all but Timmy
> McFarland and John Cannon illegally qualified Mark Griffin on the PK2 machine
> without any training at all just so Mark Griffin can maintain a position in SES.
> Everything that Mr. McFarland and John Cannon did is totally against the rules
> within Amtrak. I Brian Whitmore would like to protest this qualification.

Again, Mr. Griffin, a Caucasian, was able to remain in a position without training, while

Plaintiff, an African-American was not able to do so. In the tried and true circular manner

originally established by his predecessor, Mr. Dodd, Mr. Sessa said that he forwarded Plaintiff's

test to Tyrone Nelson. Notwithstanding that things had come full circle, Plaintiff texted Mr.

Sessa in May of 2018, imploring Mr. Sessa to telephone him. Mr. Whitmore's pleas to Mr.

14

Sessa were ignored. In sum, Plaintiff had asked four union officials for assistance, all without receiving any assistance or representation whatsoever.

31.     On April 20, 2018, Plaintiff went to the Training Department and met with Steve Ladislaw, who coincidentally seems to have taken over his father's job. This is characteristic of the nepotism at AMTRAK. Mr. Ladislaw heard Plaintiff out and then assured him that he would look into matters. However, like father, like son, Plaintiff never heard back.

32.     Plaintiff is well aware of the atmosphere of discrimination that pervades AMTRAK, particularly with respect to management's treatment of blacks involved with maintenance. Whites can call blacks "niggers.". There is a double standard where lack of training disqualifies blacks for certain positions, yet whites, like Mr. Griffin, are allowed to fill such positions without training. Whites can miss time and blacks who do the same are penalized. Whites can even sit idly by at job site and get paid when blacks have to work. In the self-same positions, whites earn overtime and blacks cannot. Whites can damage machinery and management shoves the matter under the rug. As another example, whites can repeatedly fail the NORAC exam without having their positions abolished.  The same disparities exist between the races when it comes to discipline, seniority and promotion.

33.     Recently, a white member of the TLS/CLIPPING gang, John Pekarovich was allowed to refer to a black as a" nigger". His only discipline was a letter of reprimand and being put out of service for two days with pay and then reassigned. He clearly got a free ride.

34.     As recently as October 4, 2018, black employees protested Production Director Joe Kavanaugh's racially denigrating behavior in a meeting where he highlighted a black woman as being a cheat in terms of not paying for passage and circulating a picture of her. Aside from the

15

fact that such instances are frequent with respect both to black and white freeloading passengers, there was no purpose whatsoever for this to be highlighted in a production team meeting.

35.     Plaintiff is also aware of the claims of others that BMWE favors whites as opposed to blacks, when it comes to the union's advocacy and representation. Plaintiff avers that BMWE's total lack of interest in his claims amounts to its failure of representation.

36.     At all times pertinent, Plaintiff was cooperative in his various positions and available for training.

37.     At all times pertinent, Plaintiff complained to management about failure to train and harassment on the job.

38.     At all times pertinent, Plaintiff repeatedly called the AMTRAK hotline without results.

39.     At all times pertinent, Plaintiff repeatedly complained to Defendant BMWE. Moreover, Supervisor Maurice Robinson repeatedly spoke to BMWE official Tyrone Nelson concerning Plaintiff's repeated abolishment from jobs where he was refused training.

40.     At all times pertinent, Plaintiff felt that he was being targeted and retaliated against by management because he was exercising his rights, disrupting not only his work life but also his family life.

41.     Each time that Plaintiff was put out of his position he lost pay, lost time and overtime and the opportunity of career advancement.

## COUNT I

# VIOLATION OF THE CIVIL RIGHTS ACT OF 1866, 42 U.S.C. § 1981

## BRIAN D. WHITMORE v. AMTRAK

42.     Plaintiff restates and realleges paragraphs 1 through 41 as though set forth here in full.

40.     Defendant AMTAK has discriminated against the named Plaintiff by denying

16

him the same rights as are enjoyed by white employees with respect to performance, terms, location, conditions, benefits, privileges, promotion, discipline and emoluments of their employment relationship with AMTRAK, in violation of the Civil Rights Act of 1866, 42 U.S.C. § 1981 which specifically reads as follows:

> All persons within the jurisdiction of the United States hall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all law and proceeding for the security of persons and property as is enjoyed by white citizens, and shall be subject to the like punishment, pains, penalties, taxes, licenses, and exactions of every kind and to no others.

The Civil Rights Act of 1991 added Section 1981(b) which states:

> [f]or purpose of this section, the term "make and enforce contracts" includes the making, performance, modification, and termination of contract, and the enjoyment of all benefits, privileges, term, and condition of the contractual relationship.

41.    AMTRAK's conduct has been intentional, deliberate, willful, and conducted in callous disregard of the rights of the named Plaintiff.

42.    By reason of the continuous nature of AMTRAK's discriminatory conduct, persistent throughout the employment of the named Plaintiff, he is entitled to application of the continuing violation doctrine to all of the violations alleged herein.

43.    By reason of AMTRAK's discrimination, the named Plaintiff is entitled to all legal and equitable remedies available under § 1981, including but not limited to damages for mental anguish and punitive damages. Plaintiff is also entitled to award of all relief available under 42 U.S.C §1988.

17

## COUNT II

## VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964, AS AMENDED, 42 U.S.C. § 2000e *et seq*
## RACIAL DISCRIMINATION and MAINTENANCE OF A HOSTILE WORK ENVIRONMENT

### BRIAN D. WHITMORE v. AMTRAK

44.     Plaintiff restates and realleges paragraphs 1 through 43 as though set forth here in full.

45.     Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000, *et seq.* as amended by the Civil Rights Act of 1991 ("Title VII), makes it unlawful for employers and labor organizations to discriminate against any individual in the terms, conditions, or privileges of employment on the basis of race.

46.     Discrimination on the basis of race that creates an abusive and hostile work environment, such that the conditions of employment are altered, is actionable under Title VII as racial discrimination. In order to establish a hostile work environment, five factual elements must be established: (1) that the employee suffered intentional discrimination because of his or her race; (2) that the discrimination detrimentally affected him or her; (3) that the discrimination was pervasive and regular; (4) that the discrimination would detrimentally affect a reasonable person in the same position as the employee; and (5) that respondeat superior liability exists. In the totality of circumstances described in the Background Facts, the foregoing five elements are established.

47.     AMTRAK is liable for discrimination alleged herein under the doctrine of *respondeat superior* due to the actions and statements of their respective managers and employees.

48.     AMTRAK is liable for the acts of their respective management, members and Plaintiff's co-workers, because each entity knew of their proclivities permitting discrimination and a hostile work environment to exist, but did nothing about it.

49.     AMTRAK is liable for the acts alleged herein because their respective board and managers established the corporate culture at AMTRAK which encouraged racial discrimination, harassment and retaliation.

50.     Based upon the foregoing facts, AMTRAK has discriminated against Plaintiff on the basis of his race, retaliated against him for standing up for himself and having deprived him of his rights in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e *et. seq. as amended.*

51.     AMTRAK's conduct has been disparate, intentional, deliberate, willful and conducted in callous disregard of the rights of the Plaintiff.

52.     AMTRAK's policies and/or practices have produced a disparate impact against the named Plaintiff with respect to the terms and conditions of his employment.

53.     By reason of AMTRAK's discrimination, the named Plaintiff is entitled to all legal and equitable remedies available.

## COUNT III

### RACIAL DISCRIMINATION AND MAINTENANCE OF A HOSTILE WORK ENVIRONMENT
### IN VIOLATION OF THE PENNSYLVANIA HUMAN RELATIONS ACT

### BRIAN D. WHITMORE v. AMTRAK

54.     Plaintiff restates and realleges paragraphs 1 through 53 as though set forth here in full.

19

55. The Pennsylvania Human Relations Act, 43 P.S. § 955 *et seq.*, makes it unlawful to discriminate against any individual in the terms, conditions, or privileges of employment on the basis of race.

56. Racial discrimination that creates an abusive and hostile work environment, such that the conditions of employment are altered, is actionable under the Pennsylvania Human Relations Act as race discrimination.

57. With respect to allegations of discrimination and retaliation, AMTRAK as Plaintiff's employer is strictly liable for the acts of its supervisory management employees, because the harassers and those who effectuated the discrimination used their actual or apparent authority to further the unlawful conduct, and were otherwise aided in accomplishing the unlawful conduct by the existence of an agency relationship.

58. AMTRAK is liable for the acts of management and co-workers of Plaintiff. AMTRAK deliberately failed to follow established procedure, investigate Plaintiff's situation, bring charges against those responsible, and otherwise rectify Plaintiff's situation. Instead it scapegoated and repeatedly penalized Plaintiff due to his race and retaliation against him as a result of his complaints in standing up for himself.

59. AMTRAK is liable for the acts alleged herein because its managers and supervisors established its corporate culture which encouraged racial discrimination as well as a hostile work environment.

60. Based upon the foregoing facts, AMTRAK has discriminated against Plaintiff on the basis of their race and have deprived them of their rights in violation of the Pennsylvania Human Relations Act, 43 P.S. § 955 *et. seq.*

20

61. As a result of such conduct by AMTRAK and BMWE, Plaintiffs have suffered damages as a consequence of AMTRAK's and BMWE's illegal conduct.

62. The described unlawful employment practices by AMTRAK were intentional and were done with malice or reckless indifference to Plaintiff's rights protected by the laws of the Commonwealth of Pennsylvania. These unlawful acts were committed because of his race and the fact that he stood up for himself in opposition to illegal practices directed against him.

63. AMTRAK's actions have caused Plaintiffs to suffer injury and damages in contravention of the laws of the Commonwealth of Pennsylvania.

### COUNT IV

### FAILURE TO OBSERVE DUTY OF FAIR REPRESENTATION

### BRIAN D. WHITMORE v. BMWE

64. Plaintiff restates and realleges paragraphs 1 through 63 as though set forth here in full.

65. First, pursuant to the common law and then pursuant to Section 7 of the National Labor Relations Act, 29 U.S.C. Section 151 et seq., BMWE, as Plaintiff's union, owes him a duty of fair representation in any and all matters affecting his employment. According to the NLRB the duty applies to virtually every action that a union may take in dealing with an employer as Plaintiff's representative.

66. The duty of fair representation is the legal duty of a union to equally, and in good faith, fairly and impartially represent every employee in a bargaining unit, regardless of whether the employee is a union member or not.

67. The duty arises out of the exclusive representative status that BMWE holds with respect to Plaintiff and employer AMTRAK.

21

68. The duty requires three things on the part of a union: all members' interest must be served without hostility or discrimination, discretion must be exercised with good faith and honesty; and the union must not act in an arbitrary fashion.

69. The duty of fair representation is not pre-empted by Title VII.

70. BMWE's treatment of Plaintiff can only be characterized as evidencing fraud, deceit, and dishonest conduct robbing him of his rights to training. The texts cited hereinbefore memorialize a total indifference to Plaintiff's clear rights under the Agreement by and between BMWE and AMTRAK. The few telephone calls which Plaintiff was able to have with union Representative Wahanka demonstrated the validity of Plaintiff's complaints and the need for something to be done. At one point Mr. Wahanka said that Amtrak "really screwed you" and that "you have a fuckin lawsuit." Nevertheless, union representatives did nothing to represent or promote Mr. Whitmore's interests, leaving him to run around in circles. Plaintiff remains an AMTRAK employee and a BMWE union member which union is exclusively supposed to represent him. Plaintiff's problem is a continuing one which has not been redressed. At all times BMWE has acted and continues to act in a manner that is arbitrary, discriminatory and in bad faith.

71. Given BMWE's behavior, BMWE is liable to Plaintiff for consequential damages including intentional infliction of emotional distress and attorney's fees together with equitable relief as is appropriate.

72. Defendant BMWE is liable for the acts alleged herein because its managers and supervisors established the corporate culture respectively, which encouraged the improper behavior directed at Plaintiff.

## COUNT V

## VIOLATION OF THE CIVIL RIGHTS ACT OF 1866, 42 U.S.C. § 1981

### BRIAN D. WHITMORE v. BMWE

73.   Plaintiff restates and realleges paragraphs 1 through 72 as though set forth here in full.

74.   Defendant BMWE has discriminated against the named Plaintiff by denying

him the same rights as are enjoyed by white employees with respect to performance, terms,

location, conditions, benefits, privileges, promotion, discipline and emoluments of their

employment relationship with AMTRAK, in violation of the Civil Rights Act of 1866, 42 U.S.C.

§ 1981 which specifically reads as follows:

> All persons within the jurisdiction of the United States hall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all law and proceeding for the security of persons and property as is enjoyed by white citizens, and shall be subject to the like punishment, pains, penalties, taxes, licenses, and exactions of every kind and to no others.

The Civil Rights Act of 1991 added Section 1981(b) which states:

> [f]or purpose of this section, the term "make and enforce contracts" includes the making, performance, modification, and termination of contract, and the enjoyment of all benefits, privileges, term, and condition of the contractual relationship.

75.   BMWE's conduct has been intentional, deliberate, willful, and conducted in callous

disregard of the rights of the named Plaintiff.

76.   By reason of the continuous nature of BMWE's discriminatory conduct, persistent

throughout the employment of the named Plaintiff, he is entitled to application of the continuing

violation doctrine to all of the violations alleged herein.

23

77. By reason of BMWE discrimination, the named Plaintiff is entitled to all legal and equitable remedies available under § 1981, including but not limited to damages for mental anguish and punitive damages. Plaintiff is also entitled to award of all relief available under 42 U.S.C §1988.

## **RELIEF REQUESTED**

This civil action seeks on behalf of Plaintiffs, legal and equitable relief including:

a.   A declaratory judgment declaring that AMTRAK has illegally discriminated against Plaintiff because of the color of his skin in violation of 42 U.S.C.§ 1981, Title VII of the 1964 Civil Rights Act, as amended 42 U.S.C. § 2000e et seq., the Pennsylvania Human Relations Act and Pennsylvania Common Law.

b.   An appropriate remedial order, granting injunctive relief, directing and requiring the following:

i.   Appointment of a civil rights monitor or trustee over AMTRAK's operations, fully empowered to implement any injunctive relief issued by this Court, to oversee any and all AMTRAK employment practices until such time as AMTRAK no longer discriminates against African American employees.

ii.   Appointment of a civil rights monitor or trustee over BMWE's operations, fully empowered to implement any injunctive relief issued by this Court, to oversee any and all BMWE practices until such time as BMWE adequately represents African American employees.

iii.   Cease and desist directed to both Defendants of all acts of proscribed racial discrimination as required pursuant to 42 U.S.C. Section 1981.

24

iv.    Such other remedial action as is needed to enforce compliance with all relevant standards of non-discrimination on the basis of race or color.

v.    Funds representing what would account for reinstatement of seniority and benefits with back and front pay for Plaintiff.

vi.    Reinstatement of seniority and benefits with back and front pay for Plaintiff and payment of compensatory and punitive damages, together with attorney's fees and the costs of suit in excess of $150,000, in an amount to be determined at trial pursuant to Title VII, 28 U.S.C. § 1981 and Title VII.

vii.    Payment of compensatory damages, together with attorney's fees and the costs of suit to Plaintiffs in excess of $150,00 in an amount to be determined at trial against Defendant BMWE for violation of its duty of fair representation.

viii.    Payment of compensatory damages, together with attorney's fees and the costs of suit to Plaintiff pursuant to the Pennsylvania Human Relations Act.

f.    Such other and further relief as the Court may deem just and proper.

g.    Retention of jurisdiction by this Court until such time as the Court is satisfied that AMTRAK has remedied the practices complained of herein and are determined to be in full compliance with the law.

## JURY DEMAND

The Plaintiffs demand trial by jury of all issues triable of right to a jury.

Respectfully submitted this 8th day of March, 2019.

25

*/s/ Mark D. Schwartz*
Mark D. Schwartz, Esquire
P.O. Box 330
Bryn Mawr, PA 19010-0330
Telephone & Fax: 610 525-5534
Email: MarkSchwartz6814@gmail.com
Pa. I.D. #30527


Attorney for Plaintiff,
Brian D. Whitmore